IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARDELL BOYD, | ) | CASE NO. 1:21-CV-1935 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| LEON HILL, Warden | ) | JENNIFER DOWDELL ARMSTRONG |
| | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Respondent. | ) | |

## I.  INTRODUCTION

Petitioner, Cardell Boyd ("Mr. Boyd"), seeks a writ of habeas corpus under 28 U.S.C. §
2254. (ECF No. 1). This case arises from Mr. Boyd's back-to-back attempts to kill his wife by
repeatedly stabbing her in the back with a butcher knife, and then trying to run over her with his
car and set her on fire. Mr. Boyd pled guilty to two counts of felonious assault and single counts
of domestic violence, abduction, attempted aggravated arson, and aggravated menacing. After
imposing consecutive sentences, the trial court sentenced Mr. Boyd to an aggregate of 17 years of
incarceration – 10 years less than the maximum possible sentence under the plea agreement.

Mr. Boyd asserts two grounds for relief relating to the trial court's sentencing. This matter
was referred to me under Local Rule 72.2 to prepare a report and recommendation on Mr. Boyd's
petition. For the reasons set forth below, I RECOMMEND that the Court DISMISS and/or DENY
Mr. Boyd's petition. I further recommend that the Court not grant Mr. Boyd a certificate of

1

appealability.  Finally, I recommend that George A. Fredrick, the Warden of Marion Correctional Institute, should be substituted for Leon Hill as the Respondent in this case.[1]

## II.  RELEVANT FACTUAL BACKGROUND

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Spagnola v. Horton*, No. 17-1462, 2017 WL 8948745, at *2 (6th Cir. 2017). The Ohio Court of Appeals for the Eighth District set forth the following facts on direct appeal:

> {¶ 3} The charges in this case arose from Boyd's back-to-back attempts to kill his wife. Because each attempt caused her serious injury but failed to kill her, he continued to try different methods. On January 1, 2019, Boyd thought he found evidence that his wife had been unfaithful to him. Boyd and his wife argued, he followed her to their kitchen, and he repeatedly stabbed her in the back with a butcher knife. He then turned on the gas from their stove, pushed her to the ground, held the knife to her throat, and choked her while shouting that he was going to kill her. Boyd's wife faked unconsciousness, and Boyd went to retrieve a can of gasoline from their garage. When he left, his wife stood up and opened the living room window. Boyd sprayed gasoline on her through the window and then went inside the house. Boyd's wife "dove" through the window, ran to the neighbors' house, and knocked on their door. Boyd caught her by the neck at the neighbors' door, "dragged" her back toward their house, and poured the rest of the gasoline on her head. He then tried to set her on fire with a lighter. Before Boyd could get the lighter to ignite, the neighbors approached with a firearm, and Boyd fled to his wife's car. While Boyd's wife tried to catch her breath near a tree in their front yard, Boyd accelerated the car toward her. She ran behind the tree, and Boyd crashed the car into the tree. Boyd left the scene in a different vehicle, and the neighbors called 911. EMS took Boyd's wife to the hospital, where she was treated for a collapsed lung, four stab wounds to her lower spine, ingestion of gasoline, gasoline in her lungs, abrasions to her ankles, and bruises on her upper left chest and arm. At the time of the offenses, Boyd was serving community control sanctions for a charge of domestic violence against his wife. *Garfield Hts. v. Boyd*, Garfield Hts. M.C. No. CRB 1802387 (Nov. 19, 2018).

---

[1] Leon Hill was previously the Warden of Marion Correctional Institute, where Mr. Boyd is incarcerated. George A. Fredrick, however, is now Warden of that facility. *See https://drc.ohio.gov/about/facilities/marion-correctional* (last visited on Apr. 12, 2024). Thus, Warden George A. Fredrick should be substituted as the proper respondent in this case. *See* 28 U.S.C. § 2243 ("The writ . . . shall be directed to the person having custody of the person detained."); Fed. R. Civ. P. 25(d) (providing that, "when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending[,]" "[t]he officer's successor is automatically substituted as a party.").

{¶ 4} In May 2019, Boyd pleaded guilty to six counts: felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony, with the knife as the deadly weapon; felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony, with the motor vehicle as the deadly weapon; domestic violence in violation of R.C. 2919.25(A), a third-degree felony; abduction in violation of R.C. 2905.02(A)(2), a third-degree felony; attempted aggravated arson in violation of R.C. 2909.02(A)(2), a third-degree felony; and aggravated menacing in violation of R.C. 2903.21(A), a first-degree misdemeanor. The parties agreed that Boyd would have no contact with his wife. The trial court referred Boyd for a presentence investigation and mitigation of penalty report.

{¶ 5} At the sentencing hearing in June 2019, the trial court heard from Boyd's wife, Boyd's daughter from another relationship, one of Boyd's friends, and Boyd. Boyd's wife said that this incident was the third time Boyd had physically abused her, and she had obtained a protection order against him in 2018 from the Garfield Heights Municipal Court. She thought the January violence occurred because Boyd discovered that she had filed for divorce. She described his attacks from January 1, 2019, and told the trial court that she is still in a lot of pain. She expressed fear of what Boyd may do to her in the future and "beg[ed]" the trial court to "lock him up so he can't do this to [her] again." She did not seek any form of restitution for her medical expenses. Boyd's daughter described Boyd as a caring, supportive, and good man. She explained that Boyd had family support, and she asked that he be allowed to come home. Boyd's friend said that Boyd was a hard worker, loving, and very involved in his community and church. Boyd apologized to his family.

{¶ 6} The trial court heard from each counsel, respectively. The state outlined Boyd's criminal history, acknowledged that Boyd did not serve prison time for any of his prior offenses, and asked the trial court to impose the maximum, consecutive prison sentence. The state also recounted the details of Boyd's conduct on January 1, 2019. The state started to tell the trial court about other women who came forward with allegations that Boyd had abused them, but Boyd's counsel objected, and the trial court instructed the state to focus on the events of this case. The state submitted photos of the knife, damaged vehicle, damaged tree, gasoline can, skid marks in the front yard, blood and scattered items on the kitchen floor, and injuries on his wife's back. The trial court admitted the photos over Boyd's objection. Boyd's counsel did not challenge any part of the state's recitation of the events.

{¶ 7} The trial court also heard arguments regarding which counts were allied offenses of similar import. The trial court recognized that the parties stipulated that the domestic violence count merged with one of the felonious assault counts. The trial court then found that the two counts of felonious assault, the abduction count, and the count for attempted aggravated arson were each separate offenses with a separate animus, and not allied offenses of similar import.

{¶ 8} After indicating that it had considered the presentence investigation report, both parties' sentencing memoranda, the attorneys' statements, Boyd's wife's statement, statements made on Boyd's behalf, and sentencing laws, the trial court sentenced Boyd to prison for a total of 17 years as follows: seven years for felonious assault with a knife, three

3

years for felonious assault with a vehicle, two years for abduction, seven years for attempted aggravated arson, and 178 days for aggravated menacing. The trial court imposed no sentence for domestic violence, explaining that it merged with felonious assault with a knife. The trial court ordered that the sentences for both felonious assault counts and attempted aggravated arson run consecutively to one another, and the sentences for abduction and aggravated menacing run concurrently with the sentence for felonious assault with a knife.

{¶ 9} Further, the trial court declared Boyd to be an arson offender and informed him of the accompanying registration requirements and the consequences he would face if he violated them. The trial court told Boyd that he faced a mandatory three years of postrelease control when he was released from prison, advised him of the consequences if he were to violate postrelease control, and ordered that he pay $501.04 in court costs but said that the costs may be satisfied through community service. The trial court imposed no fines or restitution and granted Boyd 178 days of jail-time credit. The trial court informed Boyd of his right to appeal and told him it would appoint counsel for him.

{¶ 10} In September 2019, over two months after the sentencing entry, Boyd filed a motion for leave to file a delayed appeal of the trial court's sentencing entry. This court granted his motion and assigned him counsel.

*State v. Boyd,* 2020-Ohio-5181, 2020 WL 6500627, ¶¶ 3-10.

## III.    RELEVANT PROCEDURAL HISTORY

### A.  <u>Trial Court Proceedings</u>

On January 14, 2019, Mr. Boyd was indicted in the Cuyahoga County Court of Common Pleas for the following offenses: attempted murder (Count 1); four counts of felonious assault (Counts 2-5); domestic violence (Count 6); abduction (Count 7); three counts of attempted aggravated arson (Count 8-10); and aggravated menacing (Count 11). (ECF No. 11-1, Exhibit 1.) Several counts included notice of prior conviction (NPC) and repeat violent offender specifications (RVO). (*Id.*)

On May 16, 2019, Mr. Boyd withdrew his guilty plea and entered a negotiated plea of guilty to one count of felonious assault with a knife (Count 3); one count of felonious assault with a vehicle (Count 4); domestic violence (Count 6); abduction (Count 7); attempted aggravated arson (Count 8); and aggravated menacing (Count 11).  (ECF No. 11-1, Exhibit 2.) The remaining counts

4

were dismissed. (*Id.*) At the change of plea hearing, the trial court advised Mr. Boyd that "for the felonies, it is possible that you will be required to serve sentences consecutive, meaning one after the other, after the other, and so on." (ECF No. 11-1, Exhibit 16, PageID # 562.) The trial court also informed Mr. Boyd that if he pled guilty, the maximum prison sentence under the plea agreement was 27 years. (*Id.,* PageID # 564.)

On June 27, 2019, the trial court sentenced Mr. Boyd to seven years for felonious assault with a knife (Count 3); three years for felonious assault with a vehicle (Count 4); two years for abduction (Count 7); seven years for attempted aggravated arson (Count 8); and 178 days time served for aggravated menacing (Count 11). (ECF No. 11-1, Exhibit 3.) The trial court imposed no sentence for domestic violence (Count 6) based on the court's finding that it was an allied offense of similar import to felonious assault with a knife (Count 3). (*Id.*) The trial court ordered that the sentences for both felonious assault counts (Counts 3 and 4) and attempted aggravated arson (Count 8) run consecutively to one another. (*Id.*)  The trial court further ordered that the sentences for abduction (Count 7) and aggravated menacing (Count 11) were to be served concurrently with each other and with felonious assault with a knife (Count 3). (*Id.*)

The trial court thus imposed an aggregate sentence of 17 years, which was 10 years less than the maximum possible sentence under the plea agreement.  (*See id.*) The trial court made findings on the record for the imposition of consecutive sentences.

**B.  Direct Appeal**

On September 26, 2019, Mr. Boyd filed a pro se notice of appeal and motion for leave to file delayed appeal in the Eighth District Court of Appeals.  (ECF No. 11-1, Exhibits 4-5.)  The Eighth District Court of Appeals granted the delayed appeal and appointed counsel to represent Mr. Boyd. (ECF No. 11-1, Exhibit 6.)

On February 20, 2020, Mr. Boyd, through counsel, raised the following assignments of error on direct appeal:

1. Appellant's sentence is contrary to law because the record does not support the individual sentences or the imposition of consecutive sentences.

2. The trial court erred by failing to merge all allied offenses of similar import and by imposing separate sentences for allied offenses which violated appellant's state and federal rights to due process and protections against double jeopardy.

(ECF No. 11-1, Exhibit 7.)  On November 5, 2020, the Eighth District Court of Appeals affirmed the trial court's judgment. (ECF No. 11-1, Exhibit 9.)

### C.  Ohio Supreme Court

Mr. Boyd filed a notice of appeal and a motion for delayed appeal to the Ohio Supreme Court on January 27, 2021.  (ECF No. 11-1, Exhibits 10, 11).  The Ohio Supreme Court granted Mr. Boyd's motion for delayed appeal. (ECF No. 11-1, Exhibit 12.)

On February 23, 2021, Mr. Boyd, acting pro se, filed his memorandum in support of jurisdiction and asserted two propositions of law:[2]

I. When any Ohio Court fails to properly consider all statutory required and mandated facts when imposing sentence, and only gives talsmatic statement that consideration was made of all factors, while plainly ignoring the main mitigation and causation factor, those courts violate the criminal defendant's constitutional right to the due process of law guaranteed them by both the US and Ohio Constitutions.

II. When Ohio Courts impose multiple punishments for charges stemming from 1 incident, with 1 victim and most importantly, a single animus, those courts violate the defendant's constitutional rights to the due process of law and constitutional right to be free of double jeopardy for multiple punishments that is guaranteed by the constitutions of the US and Ohio.

(ECF No. 11-1, Exhibit 13). In response, the State filed a waiver of memorandum. (ECF No. 11-1, Exhibit 14.)

---

[2] Mr. Boyd's propositions of law are reproduced verbatim.

On April 17, 2021, the Supreme Court declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac.R. 7.08(B)(4). (ECF No. 11-1, Exhibit 15.)

### D. Federal Habeas Petition

On October 12, 2021, Mr. Boyd, acting pro se, filed his federal habeas petition. (ECF No. 1.) He raises two grounds for relief:[3]

> **Ground One**: Unlawful imposition of consecutive sentences without required findings in violation of the 5th and 14th Amendments, due process, and a fair trial.
>
> > **Supporting Facts**: The trial court imposed consecutive sentences without making the findings required by statute to do so violating due process and a fair trial under the 5th and 14th Amendments.
>
> **Ground Two**: Double jeopardy violation for sentences imposed for allied offenses of similar import under 5th, 5th and 14th Amendments.
>
> > **Supporting Facts**: This Petitioner's constitutional rights were violated by the trial court when it imposed multiple separate and consecutive sentences for allied offenses of similar import involving a single victim, in a single incident with a single animus without any break in the temporal continuum violating due process and a fair trial and the double jeopardy clauses of the 5th and 14th Amendments.

(ECF No. 1.)

An Order to Show Cause was entered by the magistrate judge who initially presided over the case. (ECF No. 4.) The Warden filed a return of writ on January 7, 2022. (ECF No. 6.) Mr. Boyd filed a traverse on March 1, 2022. (ECF No. 8.) After the reassignment of this case to me due to the retirement of the initial presiding magistrate judge, another scheduling order was entered on April 24, 2023. (ECF No. 9.) In response to this order, the Warden filed another return of writ on June 8, 2023. (ECF No. 11.) While the second return of writ is substantially similar to the initial return of writ, one meaningful difference is that the Warden no longer maintains that Mr. Boyd's Ground Two claim is procedurally defaulted. Because I find that the second return of writ narrows

---

[3] Mr. Boyd's grounds for relief are set forth verbatim.

7

and clarifies the issues in dispute between the parties, I will refer only to the second return of writ herein. I also note that Mr. Boyd had the opportunity to file a traverse responding to the Warden's second return of writ, but he declined to do so.

## IV.    STANDARDS OF REVIEW AND GOVERNING LAW

### A.    <u>Jurisdiction</u>

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Cuyahoga County Court of Common Pleas sentenced Mr. Boyd, and the Court takes judicial notice that Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Boyd's § 2254 petition.

### B.    <u>Exhaustion and Procedural Default</u>

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however,

"refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

If a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C.    Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan*, No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D.    AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

10

Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of
the facts in light of the evidence presented in the State court proceeding.

*Id.*

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a

11

prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

V.    ANALYSIS

      A. Ground One is procedurally defaulted

      In his first ground for relief, Mr. Boyd argues that the trial court's imposition of consecutive sentences without allegedly making the findings required by the controlling statute violated his due process and fair trial rights under the Fifth and Fourteenth Amendments. The Warden maintains that Ground One is procedurally defaulted because Mr. Boyd did not fairly present this claim as a federal constitutional claim on direct appeal and instead argued only that the trial court's ruling violated Ohio law. (ECF No. 11.) The Warden's argument is well-taken.

      "[F]ederal courts ordinarily may not 'consider a claim in a habeas petition that was not "fairly presented" to the state courts' absent cause and prejudice to excuse the procedural default." *Nian v. Warden, North Central Corr. Inst.*, 994 F.3d 746, 751 (6th Cir. 2021). "[I]t does not suffice to only present the claim to a state trial court; rather, the petitioner must raise the claim in state court and 'pursue [it] through the state's ordinary appellate review procedures." *Nian*, 994 F.3d at 751-52 (quoting *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009)).

      "To determine whether a petitioner has fairly presented a claim in state court, [a court] ask[s] whether the petitioner: (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law." *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017). "While a petitioner need not cite 'chapter and verse' of constitutional law, 'general allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (quoting *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)).

I agree that Mr. Boyd did not fairly present his Ground One claim as a federal due process or fair trial claim on direct appeal. The Warden correctly argues that Mr. Boyd's Ground One argument on direct appeal focused exclusively on Ohio law. Specifically, Mr. Boyd argued in his first assignment of error on direct appeal that his sentence was "contrary to law because the record does not support the individual sentences or the imposition of consecutive sentences." (*See* ECF No. 11-1, Exhibit 8.) A review of Mr. Boyd's brief on direct appeal and the Eighth District Court of Appeals' decision, however, confirms that Mr. Boyd's arguments were solely confined to state law, and the appellate court's resolution of these arguments rested exclusively on the application of state law. (*See* ECF No. 11-1, Exhibit 8, PageID # 418-28); *State v. Boyd,* 2020 WL 6500627, ¶¶ 11-23. Mr. Boyd did not cite to the Fifth or Fourteenth Amendments in his direct appeal, did not reference his right to due process or a fair trial, did not cite to any federal cases or state cases employing a federal constitutional analysis, and did not allege facts within the mainstream of federal constitutional law. It was not until Mr. Boyd's delayed appeal to the Supreme Court of Ohio that he included a passing reference to his federal constitutional rights. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir.2009) ("For a claim to be reviewable at the federal level, each claim must be fairly presented at *every stage* of the state appellate process.") (emphasis added).

Accordingly, Mr. Boyd did not fairly present his Ground One claim to the Ohio courts. *Williams*, 460 F.3d at 806 ("To fairly present a claim to a state court, a petitioner ... must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.") And because his time to do so has long since expired, he has procedurally defaulted on his Ground One claim. *See Alley v. Bell,* 307 F.3d 380, 385 (6th Cir. 2002) ("if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of habeas review").

14

Mr. Boyd's procedural default can be nonetheless be excused if he can demonstrate either (1) cause and prejudice; or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Here, Mr. Boyd does not meet that standard.  He does not concede that any procedural default occurred, much less advance any argument that he can demonstrate cause and prejudice. And Mr. Boyd has not argued or shown that failure to consider his claim would result in a fundamental miscarriage of justice. Accordingly, I recommend that the Court dismiss or deny Mr. Boyd's first ground for relief because it is procedurally defaulted.

### B.  Grounds One and Two are not cognizable

Mr. Boyd alleges that the state court erred in sentencing him to consecutive sentences (Ground One), and that certain of his sentences should have been tried as allied offenses of similar import (Ground Two). The Warden maintains that Mr. Boyd argued in the state courts that the trial court did not follow state law in imposing consecutive sentences, and that some sentences should have merged under state law.  The Warden further asserts that these claims have "transmogrified" into due process and double jeopardy claims, and that this is impermissible in this federal habeas corpus action. I agree.

Although Mr. Boyd's Ground One and Ground Two claim reference the Fifth and Fourteenth Amendments, neither of these claims present a federal question because they plainly hinge on a matter relating to state sentencing, which is not a cognizable federal issue. It is well established that, in conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 68. As such, the Supreme Court has explained "it is not the province of a federal habeas court to reexamine state-court decisions on state-law questions." *Id.* at 67-68. *See also Bey v. Bagley*, 500

F.3d 514, 519 (6th Cir. 2007). Indeed, courts have consistently found that a habeas petitioner cannot challenge the interpretation and application of Ohio's sentencing laws, as "a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action." *Croce v.  Miller*, No. 1:15-cv-1758, 2017 WL 3394046, at *22 (N.D. Ohio July 12, 2017) (citing *Howard v. White*, 2003 WL 22146139, at *2 (6th Cir. 2003); *Rettig v. Jefferys*, 557 F. Supp.2d 830, 838 (N.D. Ohio 2007); *Ruffin v. Lazaroff*, No. 5:15CV2718, 2016 WL 7974123 at * 6 (N.D. Ohio Nov. 1, 2016); *Linde v. Turner*, No. 5:14-CV-2799, 2016 WL 1275729 at *8 (N.D. Ohio March 4, 2016); *Rossbach v. Turner*, No. 3:13-cv-552, 2015 WL 3953063 at *10 (N.D. Ohio June 29, 2015)).

And even if the trial court erred under state law in sentencing Mr. Boyd, any such errors are a *state law* issue, which is beyond the jurisdiction of this Court. *See Howell v. Tibbles*, No. 1:11-CV-02029, 2013 WL 2337977, at *11 (N.D. Ohio May 28, 2013) ("[W]hether the trial court erred under state law by failing to engage in judicial factfinding before sentencing [petitioner] to consecutive sentences, by itself, is a question beyond the jurisdiction of this court."). Significantly, Mr. Boyd has not asserted his sentence falls outside the statutory range. Courts have consistently held that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *Croce,* 2017 WL 3394046, at *22; *see also Kerr v. Smith,* No. 3:07 CV 2990, 2009 WL 88054, at *15 (N.D. Ohio Jan. 12, 2009) ("Claims which arise out of a state trial court's sentencing decision are not generally cognizable upon federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law."); *Rossbach,* 2015 WL 3953063 at * 3 ("It is well settled that a sentence that falls within the penalty set by statute normally does not violate the United States Constitution.")

Accordingly, I recommend that this Court deny Mr. Boyd's Ground One and Ground Two claims as non-cognizable because the Eighth District Court of Appeals' determination that there was no sentencing error is "axiomatically correct on habeas review." *Adrianson v. Howard*, No. 1:20-cv-952, 2021 WL 3518649, at *5 (W.D. Mich. July 12, 2021), report and recommendation adopted 2021 WL 3510778 (W.D. Mich. Aug. 10, 2021).

### C. Merits

#### *1. Ground One lacks merit*

Mr. Boyd argues in his Ground One claim that the trial court unlawfully imposed consecutive sentence without making the findings required by the Ohio statute, which violated his right to due process and a fair trial under the Fifth and Fourteen Amendments. The Warden argues that the Eighth District Court of Appeals correctly determined that the trial court did everything state law requires in imposing the consecutive sentences. I agree.

Specifically, in rejecting the same argument Mr. Boyd advances here, the Eighth District held as follows:

> {¶ 24} Boyd also argues that the trial court's imposition of consecutive sentences for both counts of felonious assault and attempted aggravated arson was contrary to law because the record does not support the trial court's findings pursuant to R.C. 2929.14(C)(4). He maintains that the trial court did not adequately explain why it was imposing consecutive sentences. He contends that mitigating factors, including his age, that he had never been to prison before, that his conduct was triggered by his wife's infidelity, and that he had an unmedicated depressive disorder, should have precluded the imposition of consecutive sentences. He also argues that his aggregate sentence of 17 years is contrary to law because R.C. 2929.11 and 2929.12 do not support it.

> {¶ 25} As the Ohio Supreme Court has explained, when reviewing consecutive sentences, "R.C. 2953.08(G)(2)(a) directs the appellate court 'to review the record, including the findings underlying the sentence' and to modify or vacate the sentence 'if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under' " R.C. 2929.14(C)(4). *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 28, quoting R.C. 2953.08(G)(2)(a).

{¶ 26} A defendant can challenge consecutive sentences on appeal in two ways. First, the defendant can argue that consecutive sentences are contrary to law because the court failed to make the necessary findings required by R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(b); *State v. Nia*, 2014-Ohio-2527, 15 N.E.3d 892, ¶ 16 (8th Dist.). Second, the defendant can argue that the record does not support the court's findings made pursuant to R.C. 2929.14(C)(4). See R.C. 2953.08(G)(2)(a); *Nia* at ¶ 16. Boyd raises the second argument on appeal.

{¶ 27} "In Ohio, sentences are presumed to run concurrent to one another unless the trial court makes the required findings under R.C. 2929.14(C)(4)." *State v. Gohagan*, 8th Dist. Cuyahoga No. 107948, 2019-Ohio-4070, ¶ 28. Trial courts must therefore engage in the three-tier analysis of R.C. 2929.14(C)(4) before imposing consecutive sentences. *Id.* First, the trial court must find that "consecutive sentences are necessary to protect the public from future crime or to punish the offender." Second, the trial court must find that "[consecutive] sentences [are] not disproportionate to the seriousness of the [offender's] conduct and to the danger the offender poses to the public." *Id.* Third, the trial court must find that at least one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*Id.*

{¶ 28} The failure to make the above findings renders the imposition of consecutive sentences contrary to law. *Gohagan* at ¶ 29. R.C. 2929.14(C)(4) directs that for each step of this analysis, the trial court must "find" the relevant sentencing factors before imposing consecutive sentences. R.C. 2929.14(C)(4). Trial courts, however, do not need to recite the statutory language word for word. *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.*

{¶ 29} Boyd relies on *State v. Metz*, 2019-Ohio-4054, 146 N.E.3d 1190, ¶ 97 (8th Dist.), for the proposition that the trial court must explain its reasons for imposing consecutive sentences. To the contrary, in *Metz* we explained that a reviewing court must determine whether the record clearly and convincingly supports the consecutive sentences. *Id.* at ¶

18

97, 110. A trial court "has no obligation to state reasons to support its findings," but the necessary findings "must be found in the record and [ ] incorporated into the sentencing entry." *Bonnell* at ¶ 37.

{¶ 30} Here, the trial court ordered Boyd's sentences for felonious assault with a knife, felonious assault with a vehicle, and attempted aggravated arson to run consecutively to one another. At the sentencing hearing, the trial court explicitly found that (1) consecutive sentences are necessary to protect the public from future crime and to adequately punish Boyd, (2) consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger he poses to the public, and (3) Boyd committed his crimes while on probation for domestic violence through the Garfield Heights Municipal Court. The trial court then explained its findings "in laymen's terms":

> You snapped, you stabbed your wife, and you deserve I think by law to be punished for that. And I've imposed a sentence for that. But then to call the rest of what you did vicious is to gloss over the degradation that you exhibited to the rest of the event. And again, I agree with [defense counsel], it's undebatable, this is one event, generally speaking, but there were several points where you could have stopped, where you could have regained control, and acted with human kindness towards a woman that you supposedly love. But you didn't. Instead, you tried to run over her with a car. And after that you tried, most violently, to set her on fire. So I don't think that a single sentence, even if you were given, for example, the maximum of eight years on one of the felony two's and everything else was run concurrent, I don't think a single sentence would adequately reflect the conduct at issue here.

Accordingly, the trial court made the requisite R.C. 2929.14(C)(4) findings and did not need to do anything more to explain its findings (although it did).

{¶ 31} We also find that the record clearly and convincingly supports the trial court's findings pursuant to R.C. 2929.14(C)(4). In support of his argument to the contrary, Boyd points to *Moore*, 2014-Ohio-5135, 24 N.E.3d 1197, at ¶ 33, 40, in which this court found that the record did not support the trial court's imposition of consecutive sentences. *Moore* is distinguishable because we relied heavily on the disparity between the defendant's sentence and that of his codefendant — facts that do not exist here. The record reflects that Boyd caused his wife serious physical harm and that she fears what he may do to her in the future. Even after Boyd's wife survived his attempts to kill her with a knife and set her on fire, Boyd still attempted to kill her by running over her with a car. Boyd's mitigation of penalty report shows that he has an extensive criminal history, including rape, sexual battery, burglary, domestic violence, aggravated menacing, drug trafficking, drug possession, and theft. Boyd was also on probation for domestic violence against his wife at the time he committed the offenses in this case. The record clearly and convincingly supports the trial court's finding that consecutive service is necessary to protect the public from future crime and to punish Boyd, and consecutive sentences are proportionate to the seriousness of his conduct and to the danger he poses to the public. Boyd's mitigation arguments do not show that the record does not support the trial court's findings to impose consecutive sentences.

19

{¶ 32} For the same reasons that we find the record clearly and convincingly supports Boyd's individual and consecutive sentences, we find that the record supports Boyd's aggregate sentence of seventeen years. Boyd caused his wife serious physical harm and tried to kill her in multiple, distinct ways. The trial court considered the purposes and principles of felony sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12, and the record supports the imposition of consecutive sentences. We do not clearly and convincingly find that Boyd's sentence is unlawful.

*State v. Boyd,* 2020 WL 6500627, ¶¶ 11-32.

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst*, 501 U.S. at 805, 111 S.Ct. 2590 (emphasis original). A state court has adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

Here, the Eighth District Court of Appeals reasonably determined on Mr. Boyd's direct appeal that the trial court made and explained the requisite R.C. 2929.14(C)(4) findings, and that the record clearly and convincingly supported the trial court's imposition of consecutive sentences. Specifically, as set forth above, the Eighth District recognized that the record reflects that even after Mr. Boyd's wife survived his attempts to kill her with a knife and set her on fire, Mr. Boyd still attempted to kill her by running over her with a car. The Eighth District also pointed to Mr. Boyd's extensive criminal history and the fact that he was on probation for domestic violence against his wife at the time he committed the offenses in this case. The Eighth District Court of Appeals thus agreed with the trial court and concluded that consecutive sentences were necessary to protect the public from future crime and to punish Mr. Boyd, and consecutive sentences were proportionate to the seriousness of his conduct and to the danger he poses to the public.

Applying AEDPA deference, the Eighth District Court of Appeals' holding is not contrary to or an unreasonable application of clearly established federal law. Nor was it based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, I recommend that the Court find that Ground One lacks merit.

### 2. *Ground Two (Allied Offenses) Lacks Merit*

Mr. Boyd argues in his Ground Two claim that his fair trial and Double Jeopardy rights under the Fifth and Fourteenth Amendments were violated by the trial court's imposition of consecutive sentences because these counts arose from a single animus in a continuous course of events against a single victim. The Warden argues that this claim fails in light of the Eighth District Court of Appeals' determination that the three distinct ways in which Mr. Boyd attempted to kill his wife – by knife, by trying to set her on fire, and by vehicle – support the trial court's conclusion that the two felonious assault and abduction offenses are not allied offenses of similar import. The Warden's argument is well-taken.

Specifically, the Eighth District rejected the same argument Mr. Boyd advances here, holding:

{¶ 34} In his second and final assignment of error, Boyd argues that the trial court violated Boyd's due process rights and protections against double jeopardy by imposing separate sentences for both counts of felonious assault and abduction, which he claims are allied offenses of similar import. He maintains that these counts arose from a single animus in a continuous course of events against a single victim.

{¶ 35} The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution, and the Ohio Constitution, Article I, Section 10, protect a defendant against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 7. But the Double Jeopardy Clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Thus, the dispositive issue is "whether the General Assembly intended to permit multiple punishments for the offenses at issue." *State v. Childs*, 88 Ohio St.3d 558, 561, 728 N.E.2d 379 (2000).

{¶ 36} In Ohio, this constitutional protection is codified in R.C. 2941.25. *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 23. "Merger is 'the penal

philosophy that a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime.' " *Id.* at ¶ 23, fn. 3, quoting *Maumee v. Geiger*, 45 Ohio St.2d 238, 244, 344 N.E.2d 133 (1976).

{¶ 37} Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However,

> [w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B).

{¶ 38} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 26. In *Ruff*, the Ohio Supreme Court held that if a defendant's conduct supports multiple offenses, the defendant can be convicted of all of the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import or significance, (2) the conduct shows the offenses were committed separately, or (3) the conduct shows the offenses were committed with separate animus or motivation. *Id.* at paragraph three of the syllabus, citing R.C. 2941.25(B).

{¶ 39} Two or more offenses are of dissimilar import within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." Ruff at paragraph two of the syllabus.

{¶ 40} When determining whether two offenses are allied offenses of similar import, we apply a de novo standard of review. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶ 41} Boyd was charged with two counts of felonious assault in violation of R.C. 2903.11(A)(2). This provision states that no person shall knowingly "[c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." The deadly weapon for the first count was a knife, while the deadly weapon for the second count was a motor vehicle.

{¶ 42} Boyd was also charged with abduction under R.C. 2905.02(A)(2), which provides that "[n]o person, without privilege to do so, shall knowingly * * * [b]y force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear[.]"

22

{¶ 43} Under *Ruff*, we must consider these offenses in the context of Boyd's conduct to determine (1) if the offenses were dissimilar in import or significance; (2) if the offenses were committed separately, or (3) if the offenses were committed with a separate animus or motivation. If any of these three factors apply to Boyd's conduct, the offenses are not subject to merger pursuant to R.C. 2941.25. *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 25.

{¶ 44} Offenses that occur "close in time and proximity" can still "involve separate conduct for purposes of an allied offense analysis." *State v. Black*, 2016-Ohio-383, 58 N.E.3d 561, ¶ 27 (8th Dist.), discretionary appeal not allowed, *State v. Black*, 145 Ohio St.3d 1461, 2016-Ohio-2807, 49 N.E.3d 322. In *Black*, the defendant committed the first offense when he punched the victim in her bedroom, and after a break in the violence when the victim tried to escape through an upstairs window, the defendant committed the second offense by pushing the victim off of the roof. *Id.* at ¶ 28. Even though the defendant committed the acts close in time and proximity to one another and against the same victim, this court affirmed the trial court's holding that the offenses were not allied. *Id.* at ¶ 29; *see also State v. Jenkins*, 8th Dist. Cuyahoga No. 105881, 2018-Ohio-2397, ¶ 66 (defendant's offense of placing a loaded firearm in his vehicle was separate from the offense of firing the firearm while driving his vehicle, and the offenses did not merge).

{¶ 45} Here, even though Boyd's acts of felonious assault and abduction arose close in time and proximity to one another and were against the same victim, and even if those counts arose from a single animus to try to kill his wife, the offenses were committed separately. After each attempt failed to kill his wife, Boyd tried to kill her in a different manner. Felonious assault with a knife was for Boyd's knowing attempt to physically his harm his wife by repeatedly stabbing her with a knife while they were in their kitchen. Boyd's wife faked unconsciousness and managed to escape to the neighbor's house. Boyd then knowingly used force to restrain his wife by pulling her by her neck back to their house, and this distinct conduct underlies the abduction count. After Boyd tried to set his wife on fire and the neighbors intervened, his wife thought she was safe and rested by a tree. But Boyd reinitiated the violence by attempting to physically harm his wife by running her over with a car in the front yard, leading to the separate count of felonious assault with a vehicle. Boyd made three distinct decisions: first, to stab his wife with a knife; second, to drag her by her neck away from the neighbors' house; and third, to try to hit her with a car in the front yard. Boyd's separate acts support the conclusion that the two felonious assault and abduction offenses are not allied offenses of similar import.

{¶ 46} Accordingly, we overrule Boyd's second and final assignment of error.

*State v. Boyd*, 2020 WL 6500627, ¶¶ 34-46.

Here, the Eighth District Court of Appeals reasonably determined on Mr. Boyd's direct appeal that the offenses were committed separately, even though his acts of felonious assault and abduction arose close in time and proximity to one another, were against the same victim, and

arose from a single animus to try to kill his wife. That is because after each time Mr. Boyd failed

to kill his wife, he tried to kill her in a different manner. Specifically, the Eighth District recognized

that Mr. Boyd made three distinct decisions: first, to stab his wife with a knife; second, to drag her

by her neck away from the neighbors' house; and third, to try to hit her with a car in the front yard.

Thus, the Eighth District concluded that Mr. Boyd's separate acts support the conclusion that the

two felonious assault and abduction offenses are not allied offenses of similar import.

Applying AEDPA deference, the Eighth District Court of Appeals' holding was not

contrary to or an unreasonable application of clearly established federal law. Nor was it based on

an unreasonable determination of the facts in light of the evidence presented in the state court

proceedings.  Accordingly, I recommend that the Court find that Ground Two lacks merit.

## VI.     RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.  Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal

a denial of an application for a writ of habeas corpus unless a judge issues a certificate of

appealability. The statute further provides that "[a] certificate of appealability may issue . . . only

if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial

of a constitutional right, the burden on the petitioner is obviously less than the burden for

establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts

that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant

to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the

issues (in a different manner); or that the questions are adequate to deserve encouragement to

proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)).  The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.  Analysis

Mr. Boyd has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find this conclusion to be debatable, I recommend that no Certificate of Appealability issue in this case.

## VII.  RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Boyd's petition for writ of habeas corpus under 28 U.S.C. § 2254. I also RECOMMEND that the Court not grant him a Certificate of Appealability. Finally, I also recommend that Warden George A. Fredrick should be substituted for Warden Leon Hill as the Respondent in this case.

## VIII.  NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Id. (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be

26

excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79

(6th Cir. 2019).

Dated: April 16, 2024

_s/ Jennifer Dowdell Armstrong_
Jennifer Dowdell Armstrong
United States Magistrate Judge

27